PEARSON, J.
 

 In the Court below, the case turned upon whether the plaintiff was entitled to actual or nominal damages, assuming his right to maintain the action. It was held that he could only recover nominal damages, and he appealed.
 

 Upon the argument here, it was mentioned by the Court, that the case of the State v. Watson, 7 Ired. 290, left the question of the plaintiff’s right to maintain the action open, owing to the peculiar circumstances under which the decision was madé. Judge Nash thought the plaintiff could maintain the action, and was entitled to actual damages. Judge Daniel thought the plaintiff was only entitled to nominal damages, but might show himself to be entitled to actual damages, provided he could make proof of several contingent events. Judge Ruffin diss'en-
 
 *366
 
 ted, but filed no opinion. The question being open, it was suggested that the point might be raised here, although it was not taken in the Court below, by a motion in arrest of judgment. For, if the plaintiff, by his own showing, had no cause of action, he of course could not be entitled to a
 
 venire de novo;
 
 nor could he have judgment for the nominal damages j and, on the other hand, the defendant could not ask for judgment, because in the Court below he had, upon the trial, made no question as to the plaintiff’s right to nominal damages.
 

 Mr. Biggs thereupon moved in arrest of judgment. After much consideration, Judge Battle and myself, (Judge Nash still retaining his former opinion,) think that, upon authority, and a proper construction of the statute, the plaintiff had no cause of action.
 

 We take it to be clear, that the purpose for which officers are required to give bond and sureties, is to make the bond a security for any damage that may be sustained by reason of a breach of their official duty; that is the only object for requiring the bond. It-follows, no action can be maintained on the bond, (for no breach can be shown,) except where there has been such damages sustained, as would give the party a right to maintain an action on the case. So the question is, could the plaintiff maintain an action on the case against the defendant for a neglect of his official duty in not issuing the sum-ipons ? That this presents the true question, will also appear from the fact, that the breach assigned by the declaration, is a neglect of official duty in not issuing the summons, whereby the plaintiff sustained damage. That would be the gravamen of an action on the case; and as the gravamen is the same, of course the cause of action must be the same. This view is pressed, because it would seem not to have been taken by Judge Daniel, in State v. Watson, and may account for the position in which he is placed between the other two Judges. It is settled, that, “ to sustain an action on the case, it must not only appear that the plaintiff has sustained damage, and that the defendant has committed a tort, but that the damage is the clear and necessary
 
 *367
 
 consequence of the tort, and can be clearly defined and ascertained.” “ If the damage be too remote, indefinite and contingent, the action will not lie.” Booe v. Wilson, ante. 182; March v. Wilson, Busbee 148; Gardiner v. Sherred, 2 Hawks. 178; Lamb v. Stone, 11 Pickering 527. The statute makes it the duty of the overseers of roads to keep up “ finger boards ” at the forks of the road. Suppose an overseer neglects his duty in this particular; a traveler comes along and takes the wrong road; after going a short distance, his horse stumbles and falls, and he is much injured by a fall: or, suppose the traveler goes so far before he discovers his mistake, that he is belated, and so much detained that he is unable to reach a certain place in time to attend to important business, in consequence of which he loses a chance to make money, or a chance to save it; can he maintain an action against the overseer to recover such damage as the jury may see proper to give ?
 
 Non constat,
 
 but his horse would have fallen, if he had taken the right road.
 
 Non constat,
 
 that he would have noticed the finger board, if one had been there ; and
 
 non constat,
 
 but he would have missed his way at some other fork. So in our case,
 
 non constat,
 
 if the defendant had issued the summons, that the sheriff would ever have served it, or if he had,
 
 non constat,
 
 that the guardian or his sureties would have paid any attention to it; and
 
 non constant,
 
 that the County Court would have caused such proceedings to be had thereon, as would have resulted in any good. On the contrary, from the fact that a summons afterwards did issue, and after lying in Court several terms, was dismissed, and resulted in nothing, the chances are, that such would have been the fate of the notice, for the failure to issue which, the plaintiff now sues. These damages are too remote and conjectural to be made the ground of an action of this kind to maintain it. The damage must be certain or capable of being made certain, and must be the natural consequence of the wrongful act, so as not to rest on mere contingencies.
 

 But we do not in the second place think it was the intention
 
 *368
 
 of the statute to make clerks liable to be sued upon their official bonds for neglecting to issue these .notices, for several reasons.
 

 1. The damages for a breach would of necessity be uncertain and conjectural; so that actual damage could not be assessed, and it could hardly have been the intention to give actions, by which the plaintiffs could in no event be benefitted, for the mere purpose of distressing the defendants by way of costs.
 

 . 2. The second section of ch. 54 Rev.
 
 Statute,
 
 “guardians and wards,” directs the Courts to take good security for the estates of infants, and makes “ the Justices appointing such guardian liable
 
 for all loss and damages sustained by the orphan for the 'want of such security being taken,
 
 to be recovered by action,” &c. The 12th section of same chapter requires guardians to exhibit their accounts to the Justices for examination, and provides “that it shall be the duty of the clerk of the Court,
 
 under penalty of one hundred dollars, (to be applied to the use of the ward,) to issue ex-officio summons,
 
 i’eturnable to the next Court,” &c. The 12th section allows the clerk, for issuing the summons, as in the last section directed,
 
 a fee of sixty cents,
 
 to be recovered of the guardian.
 

 The 7th section, the one now. under consideration, requires guardians to renew their bonds every three years, and provides, '“it shall be the duty of the clerks of the several County ’Courts
 
 to issue an ex-officio summons
 
 against each guardian who shall fail,” &c.
 

 No provision is made that the clerk, on failure, shall be liable for the amount of the orphan’s estate, or for all loss and damages sustained by the want of such summons. No provision is made that he shall be liable to a penalty, or by which he is allowed a fee for issuing the summons, and no time is fixed, within which the summons
 
 must be issued or be made
 
 returnable. Now, from what can it be inferred that it was the intention to create and fix upon the bonds of the clerks of the several County Courts a liability that might amount to the value of the estates of every ward in their county ? There is nothing, except that it is made their duty to “
 
 issue an ex-officio summons
 
 
 *369
 
 What is the meaning of
 
 ex-officio
 
 in the sense in which it is here used? Clearly, that he is to issue the summons without
 
 waiting
 
 for the County Court to make any
 
 order
 
 to that effect. Just as the Governor is
 
 ex-offieio
 
 chairman of a board, without waiting for any further appointment. This satisfies the meaning of the word; and there is no rule of construction, by which.it can be extended, so as to make an inference which will be attended by such important results. ...
 

 3d. If so great a change in regard to the liabilities of clerks had been contemplated, it is natural to have expected to find the law, under the head of “ clerks,” accompanied by a requisition that the penalty of their bonds should be increased ; and it is also natural to have expected to find some limit fixed in regard to the’ time during which the liability should continue, and the number of years that it was expected, and made the duty of the clerk to look back among the papers, and see who had ndt renewed his bonds, among the guardians whose appointments appear on the books. Whereas this matter is left open, and he is bound to see to the bond of every guardian appointed within twenty-one years next before he became clerk, and this without fee or reward. .
 

 4th. Upon the whole, we conclude that it was not intended to make this one of the
 
 duties appertaining to the office of elerTe,
 
 as to keep safely the records, issue writs, &c., and that the clerk was selected as the person to issue these summonses, simply because it was as convenient, or more so, for him to do it, than any one else; otherwise, why the omission to annex a penalty, or some other mode of enforcing the performance of this new official duty.
 

 Judgment arrested.